UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-20485-CR-HUCK/BANDSTRA

UNITED STATES OF AMERICA,

vs.

DESMOND S. BULLOCK, et al.,

    Defendants.
_____/

IN RE: THIRD PARTY CLAIM FILED BY:

MASHICA BULLOCK,

    Petitioner.
_____/

## REPORT AND RECOMMENDATION

THIS CAUSE came before the Court on Third Party Mashica Lewis-Bullock's Petition to Contest Forfeiture of Property (D.E. 271) filed on February 23, 2011. In this petition, Mashica Lewis-Bullock (hereinafter "petitioner"), appearing *pro se*, seeks the return of United States currency seized from her residence pursuant to a search warrant used during a criminal investigation of petitioner's husband, Desmond S. Bullock, executed in March 2010. Subsequently, this seized property, totaling $34,696.00, was voluntarily forfeited by Desmond Bullock to the United States in conjunction with his guilty plea and sentencing in December 2010. On May 5, 2011, this petition for return of property was referred to the undersigned for necessary and proper action by the Honorable Paul C. Huck pursuant to 28 U.S.C. §636(b)(1). Accordingly, the undersigned conducted an evidentiary hearing on this petition on July 13, 2011. Based on the facts as found herein,

and applicable law, the undersigned recommends that this petition be DENIED.

## PROCEDURAL HISTORY

On June 25, 2010, Desmond S. Bullock (hereinafter "Bullock" or "defendant"), and others, were charged, *inter alia*, with a conspiracy to possess with intent to distribute controlled substances in violation of 21 U.S.C. §§ 846 and 841(a)(1) and related offenses. The indictment also contains forfeiture allegations supporting the government's request that Bullock forfeit any "property which was used or intended to be used... to commit or facilitate the commission of [the charged offenses]". See Indictment (D.E. 3), pg. 8, ¶2.

On October 8, 2010, Bullock pled guilty to conspiracy to possess with intent to distribute controlled substances and agreed to forfeit all of his right, title and interest in the properties indentified in the indictment including the subject currency. The underlying offenses giving rise to the forfeiture were described at the change of plea hearing and are set forth in the Plea Agreement and the Stipulated Factual Proffer as follows:

- a. The FBI and Fort Lauderdale Police Department (FLPD) conducted an investigation into the drug trafficking activities of Bullock and his associates. Said investigation included court-authorized interception which commenced on November 20, 2009 and terminated February 20, 2010.

- b. Pursuant to the court-authorized wire intercepts and physical surveillance, Bullock was a kilo-level distributor of crack and powder cocaine.

- c. Many of the drug transactions took place at Bullock's residence.

- d. Pursuant to the court-authorized wire intercepts and physical surveillance, Bullock was negotiating a $30,000 drug transaction shortly before the date of arrest [Stipulated plea offer] (D.E. 161).

On December 17, 2010, a Preliminary Order and Judgment of Forfeiture was entered forfeiting all of defendant's right, title and interest in the subject cash.

On December 21, 2010, defendant was sentenced to 158 months' imprisonment and forfeiture was imposed as part of his sentence.

### MASHICA LEWIS-BULLOCK'S PETITION

On September 10, 2010, petitioner filed an administrative petition for remission with the Federal Bureau of Investigation claiming $600.00 of the subject cash. Petitioner claimed that this $600.00 was seized from a Bible inside of her residence and that this money had been given to her by her mother to purchase clothes for her children. The government has advised that the administrative petition was granted by the FBI and the $600.00 was, or will be returned, to petitioner.

On February 23, 2011, petitioner filed the instant verified petition in this criminal case seeking the return of "property" seized from her residence "due to it being earned through legitimate businesses and hard work..." Petitioner later clarified that she is seeking only the return of $16,000 of the total amount of cash seized from her residence ($34,696.00) as money she and her husband had borrowed from her mother to start a business in 2008.

Petitioner has filed her petition without benefit of counsel and no memorandum of law was included with the petition. Nevertheless, the Court accepted this petition and proceeded with an evidentiary hearing after explaining petitioner's rights and burden of proof at a status conference conducted on May 18, 2011.

## **FINDINGS OF FACT**

On July 13, 2011, this Court conducted an evidentiary hearing on this petition and heard testimony offered by petitioner, her husband, Desmond Bullock, and Christopher Macrae, a Special Agent with the FBI who participated in Bullock's investigation. Based on the testimony and documents received into evidence from petitioner and the government, the undersigned finds the following facts.

In November 2008, petitioner and Desmond Bullock, as husband and wife, spoke to petitioner's father, Lester Wiggins, about their need for money to start a towing business. Soon thereafter, petitioner's mother, Donnis Garrett, agreed to lend $16,000.00 to petitioner and her husband from funds she had available following the refinancing of her home. Ms. Garrett agreed to loan this money to petitioner and Desmond Bullock for the purpose of their starting their own towing company and paint and auto body shop. Petitioner and Bullock agreed to start paying back the $16,000.00 loan in three years.

Petitioner and Bullock received the $16,000.00 in United States currency in late 2008 and put it in a shoebox kept at their residence. Shortly thereafter, petitioner became pregnant which resulted in a deferral of their plans to start the towing and body shop business. Petitioner and Bullock kept the subject cash in the shoebox in a bedroom closet. Petitioner periodically checked the box and currency on two or three occasions in 2009, and determined that the total amount had gradually increased to $22,000 by June of that year. Petitioner asked Bullock about this and was told that he had deposited additional monies into the shoebox from monies he had made from his employment. Petitioner saw Bullock add money to the box on one occasion. She last checked the box in March 2010 confirming that it still contained an undetermined amount of cash.

Meanwhile, FBI and other federal agents commenced a narcotics investigation involving Bullock and several other individuals in August 2009.[1] As a result, the agents determined that Bullock was involved in purchasing "kilogram quantities" of powdered cocaine which he "cooked" at his residence to produce crack cocaine. Bullock used his residence (also the residence of petitioner) to receive powder cocaine on a monthly basis, "cook" it into crack, and to receive payment there from sales of his product. Bullock also used his place of business to distribute crack cocaine and to receive monies generated by his narcotics activities. Special Agent Mcrae estimated that Bullock had approximately $72,000 "flowing through" his apartment and place of business on a monthly basis in late 2009 and early 2010.

On March 24, 2010, the federal agents obtained information that Bullock had arranged to purchase a kilogram quantity of powdered cocaine at his residence for $30,500. The agents intercepted Bullock as he drove to his residence and advised him of their knowledge of his intended drug purchase. The agents also advised Bullock that his residence would be searched pursuant to a search warrant so that he could forewarn petitioner and their children.

Bullock then accompanied the agents to his home and advised that the money he had intended to use to purchase cocaine that day was located in a shoebox in his closet. The agents found and seized $34,696.00 in United States currency from one shoebox located in Bullock's closet as well as a "drug" scale, plastic bags, baking soda, and other

---

[1] Special Agent Macrae explained that this investigation involved numerous activities including surveillance at Bullock's residence, a "trash pull" on one occasion, and a wiretap on one or more of Bullock's telephone(s).

5

narcotics paraphernalia in a second shoebox in the closet.

On June 25, 2010, Bullock was indicted with several co-defendants and charged with a conspiracy to possess with intent to distribute a controlled substance and related offenses. In October of that year Bullock pled guilty to the conspiracy offense. Bullock also signed a Stipulated Factual Proffer (D.E. 161) in which he admitted his involvement in the drug conspiracy and related offenses.

## ANALYSIS

Petitioner, proceeding *pro se*, requests the return of $16,000 of the $34,696 seized from the residence she shared with Bullock, her husband, on the ground that this money was "earned through legitimate businesses and hard honest work" which is needed to take care of her children. Petition (D.E. 271). Petitioner argues that this $16,000 was received as a loan from her mother prior to any illegal narcotics activity of her husband, and that she should not "have to lose all of our earnings due to its being banked in house and Desmond Bullock's outside activities." *Id.* Petitioner, unable to afford an attorney, offers no legal argument in support for her position.

The government opposes the petition on the basis of the facts of this case and 21 U.S.C. §853(a)(1) and (a)(2) which provide in pertinent part:

> Any person convicted of a violation of this subchapter or subchapter II of this chapter punishable by imprisonment for more than one year shall forfeit to the United States, *irrespective of any provision of State law* -
>
> (1) any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the results of such violation...
>
> (2) any of the person's property used, *or intended to be used*, in any manner or part, to commit, or to facilitate the commission of, such violation...

(emphasis added). *See also, United States v. Eldick*, 223 Fed.App'x 837, 840 (11th Cir. 2007) (unpub.) ("[N]o third party could ever have an interest in the proceeds of the crime that is superior to that of the government's"). The government correctly notes that to "facilitate" the commission of an offense means to aid, promote, advance, or make easier, the commission of the act or acts constituting the offense. The property need not be indispensable to the commission of the offense, nor does the property have to have been used exclusively for the commission of the offense or as the exclusive means of committing the offense. Consequently, the property used to facilitate an offense can be in virtually any form. *See United States v. Rivera, et al.*, 884 F.2d 554 (11th Cir. 1989) (property need nor be physically used to carry out drug transactions; liberal construction of term "facilitate" approved).

While acknowledging petitioner's right to seek redress here under §853(n) of the forfeiture statute,[2] the government contends that petitioner fails to establish by a

---

[2] Title 21, United States Code, Section 853(n) provides in relevant part:

Any person other than the defendant, asserting a legal interest in property which has been ordered forfeited to the United States pursuant to this section may ... petition the court for a hearing to adjudicate the validity of his alleged interest in the property...

(6) If, after the hearing, the court determines that the petitioner has established by a preponderance of the evidence that -

(A) the petitioner has a legal, right, title, or interest in the property, and such right, title, or interest... is superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property... **or**

(B) the petitioner is a bona fide purchaser for value of the right, title or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture...

7

preponderance of the evidence either (a) that she has a "legal, right, title or interest in the [forfeited property].... superior to any right, title or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property;" or (b) that she "Is a *bona fide* purchaser for value ... of the property...." 21 U.S.C. §853(n)(2)(A) and (B). Rather, the government argues, the entire $34,696.00 seized from the subject residence were criminal proceeds or "facilitation property" used or intended to be used to facilitate defendant's criminal activities.

Reviewing this matter in its entirety, and cognative of the requirements of the forfeiture provisions cited above, the undersigned agrees with the government's position and finds no factual or legal basis to return any portion of the seized currency to petitioner despite her credible testimony as to the $16,000 loan from her mother and clear need for this money. The government correctly argues that §853(n) allows a third party such as petitioner to defeat the government's claim to forfeited property in only one of two ways; namely, by establishing that her "right, title, or interest" in the property is superior to that of the defendant's or by demonstrating that she was a *bona fide* purchaser of the property for value without reasonable cause to believe that it was subject to forfeiture at the time of the purchase. *See United States v. Kennedy*, 201 F.3d 1324 (11th Cir. 2000) (the alternative grounds set forth in sections 853(n)(6)(A) and (B) are the **only** grounds for recovery in the ancillary proceeding) (emphasis added).

Here, petitioner can establish neither to defeat the forfeiture. Factually, petitioner

---

the court shall amend the order of forfeiture in accordance with its determination. Title 21, United States Code, (emphasis added).

8

has established that she and Bullock, her husband, jointly acquired $16,000 in cash from her mother in 2008 as a loan to assist them in their desire to start a towing and body shop business. Petitioner has not shown, however, that her "right title or interest" in this money was superior to that of her husband notwithstanding the fact that it was co-borrowed from petitioner's mother. Nor does petitioner contend that she is a "*bone fide* purchaser" of the forfeited property which is not the situation here. Simply stated, petitioner and Bullock had equal "right, title and interest" to the subject cash having acquired it at the same time and for the same purpose. Thereafter, Bullock appears to have misappropriated this money for his own criminal activities which now leaves petitioner with no recourse under the forfeiture provisions applicable here. The government's evidence clearly establishes that Bullock had an active and ongoing narcotics business which he operated from the residence he shared with petitioner and which resulted in significant cash flow there on a monthly basis to both purchase and sell cocaine. The government's evidence shows that Bullock intended to use the $34,696 seized from the shoebox in his closet to finance the purchase of a kilogram of cocaine that day. Petitioner herself acknowledges this but argues that this was without her knowledge or approval. While understanding petitioner's unfortunate circumstances, the undersigned finds no legal ground to return any portion of this forfeiture property to her under the facts and law of this case.

Accordingly, the undersigned recommends that Mashica Lewis Bullock's Petition to Contest Forfeiture of Property (D.E. 271) be DENIED.

The parties may serve and file written objections to this Report and Recommendation with the Honorable Paul C. Huck, within ten (10) days of the receipt.

See 28 U.S.C. § 636(b)(1)(c); *United States v. Warren*, 687 F.2d 347, 348 (11th Cir. 1982), cert. denied, 460 U.S. 1087 (1983); and *Hardin v. Wainwright*, 678 F.2d 589, 592 (5th Cir. Unit B. 1982); see also *Thomas v. Arn*, 474 U.S. 140, 153 (1985).

RESPECTFULLY SUBMITTED in Miami, Florida this 21st day of July, 2011.

_____
TED E. BANDSTRA
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Honorable Paul C. Huck
All counsel of record